UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN BUSZKIEWICZ,

        Plaintiff,

v.

NANCY A BERRYHILL, Deputy
Commissioner of Social Security for Operations,

        Defendant.

Case No. C17-1484 JCC

**ORDER REVERSING AND REMANDING THE CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff, John Buszkiewicz, seeks review of the denial of his application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). Plaintiff contends the ALJ erred by discounting several medical opinions and his testimony. Dkt. 9. As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

I.     BACKGROUND

Plaintiff is currently 56 years old, has a limited education, and has worked as a line cook. Tr. 33. Plaintiff alleges disability as of March 7, 2014. Tr. 21. Plaintiff's applications for SSI and DIB were denied initially and on reconsideration. Tr. 74, 75, 92, 93. The ALJ conducted a hearing on March 7, 2016. Tr. 41. On April 28, 2016, the ALJ issued the decision that is presently before the Court, finding plaintiff not disabled. Tr. 21-35. Plaintiff reapplied for

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 1

disability benefits and, in March 2018, the Commissioner determined that plaintiff became disabled on April 29, 2016—the day after the ALJ issued the decision under review here. Dkt. 13-1.

II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 7, 2014.

**Step two:** Plaintiff has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, fibromyalgia, and anxiety disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work, lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. He can stand or walk six hours and sit for six hours a day. He can occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds, frequently balance and crouch, and occasionally stoop, kneel, and crawl. He must avoid concentrated exposure to extreme cold and excessive vibration, and must not work at unprotected heights. He can perform simple routine tasks, in a routine work environment with simple work-related decisions and only superficial interaction with coworkers and the public.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** Because there are jobs that exist in significant numbers in the national economy that plaintiff can perform, plaintiff is not disabled.

Tr. 23-35. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.[3]

III. DISCUSSION

This Court may set aside the Commissioner's denial of social security benefits only if the

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 2

ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### A. Medical Source Opinions

Social Security regulations distinguish among treating, examining, and nonexamining physicians. 20 C.F.R. § 404.1527. "While the opinion of a treating physician is … entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

In this case, there are no treating doctors' opinions. Six examining medical sources and two nonexamining doctors offered opinions. The ALJ rejected opinions from every examining medical source and accepted the opinions of the two nonexamining doctors.

An ALJ may only reject the uncontradicted opinion of an examining doctor for "clear and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). Even if contradicted by another doctor's opinion, the opinion of an examining

doctor may only be rejected for "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

      1.     Mark Vandervort, P.A.-C.

A physician's assistant is a "medical source" but not an "acceptable medical source." *See* 20 C.F.R. § 404.1502(a), (d). An ALJ may reject opinions from such sources by providing "germane" reasons. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Mr. Vandervort issued two opinions on plaintiff's condition, in January 2014 and August 2015. Tr. 518, 510. The ALJ gave "great weight" to the first, which opined plaintiff could perform light work, and "little weight" to the second, which opined plaintiff could perform sedentary work. Tr. 30-31. The ALJ discounted the 2015 opinion on the grounds that it was inconsistent with Mr. Vandervort's own findings of normal gait, full upper extremity range of motion, and ability to stand on heels and toes. Tr. 31. The 2014 opinion, to which the ALJ gave great weight, noted the same upper extremity range of motion and heel/toe stand results; gait was not documented. Tr. 522. In a whole-body examination, it is unsurprising that some results are normal. The ALJ does not identify any significance to these selected results. And the ALJ fails to address the changes between the 2014 and 2015 examination findings that support greater restrictions. Mr. Vandervort documented worsening range of motion in the neck between 2014 and 2015. Tr. 523, 513. He also gave an increased severity rating in 2015 ("Marked") compared to 2014 ("Moderate") for plaintiff's cervical stenosis. Tr. 511, 519. And Mr. Vandervort added a diagnosis of fibromyalgia in 2015.[4] Tr. 511. In this context, the ALJ's listing of a few normal results, without more, is not a germane reason to discount Mr. Vandervort's opinion.

The Court concludes the ALJ erred by discounting Mr. Vandervort's 2015 opinion.

---

[4] The ALJ concluded that fibromyalgia was one of plaintiff's severe impairments. Tr. 24.

### 2. Daniel Stephenson, D.O.

In October 2014, Dr. Stephenson opined that plaintiff could only perform sedentary work, based on findings of decreased range of motion in plaintiff's neck, back, hips, and knees. Tr. 449-51. The ALJ gave his opinion "partial weight" because treatment notes from August 2014 show full range of motion and strength in upper and lower extremities, except for left hand weakness. Tr. 31 (citing Tr. 364-66). The August 2014 exam did not document neck or back range of motion.

Consistency with the record as a whole is a factor relevant to evaluating a medical opinion. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Here, in the record as a whole, neck range of motion is consistently below normal, in accord with Dr. Stephenson's findings, but other findings are less consistent. Tr. 523, 405, 384, 381, 377, 420, 475, 513, 266, 488 (neck range of motion was decreased in eight of ten examinations between January 2014 and August 2015). Back range of motion was decreased in January 2014, as Dr. Stephenson found, but normal in August 2015. Tr. 523, 513. Extremity range of motion findings were largely normal, although three of seven exams found decreased hip range of motion, as Dr. Stephenson found. Tr. 405, 384, 381, 377, 420, 488, 475, 513-14. Extremity strength (which Dr. Stephenson did not report) was normal in March 2012 and January 2014, but upper right extremity weakness was found in February 2012. Tr. 426, 522-24, 428. Shoulder strength was intact in April 2015 but decreased bilaterally in July 2015. Tr. 475, 488.

Given this mix of evidence, and mindful that it is the ALJ's responsibility to resolve conflicts in the medical evidence, the Court concludes that substantial evidence supports the ALJ's interpretation that Dr. Stephenson's opinions relied on findings not supported by the record as a whole. *See Andrews*, 53 F.3d at 1039 (ALJ is responsible for "resolving conflicts in

medical testimony"). Accordingly, the ALJ did not err by discounting Dr. Stephenson's opinions.

### 3. W. Douglas Uhl, Psy.D.

The ALJ gave "little weight" to Dr. Uhl's opinion that plaintiff would be severely impaired in the ability to learn new tasks and markedly impaired in the ability to maintain appropriate behavior in a work setting. Tr. 31, 433. The Commissioner concedes that the ALJ erred by giving Dr. Uhl's finding that plaintiff is a "concrete thinker" as a reason to discount his opinion, because concrete thinking indicates deficiency in abstract thinking. *See* Dkt. 12 at 6, n. 1; Tr. 434. The ALJ also discounted Dr. Uhl's opinion because he examined the plaintiff once and did not review his medical records. Tr. 31. Examining plaintiff once would be a reason to favor a *treating* doctor's opinion over an examining doctor's, but it is not sufficient here, where the ALJ rejected Dr. Uhl's opinion in favor of nonexamining doctors' opinions. *See Garrison*, 759 F.3d at 1012. Similarly, because the ALJ listed "physically examining the claimant" one time as a reason to *accept* Mr. Vandervort's 2014 opinion, the ALJ cannot use the same reason to *reject* Dr. Uhl's opinion. Tr. 30, 31. As for reviewing records, the ALJ identifies nothing in plaintiff's medical records that would contradict or undermine Dr. Uhl's opinion, or any information that might cause Dr. Uhl to change his opinion if he were aware of it. In this context, not reviewing medical records is not a specific and legitimate reason to discount Dr. Uhl's opinion.

The Court concludes the ALJ erred by discounting Dr. Uhl's opinion.

### 4. Ellen L. Walker, Ph.D.

The ALJ gave "little weight" to Dr. Walker's opinions that plaintiff was markedly limited in his abilities to learn new tasks, persist in tasks by following detailed instructions, and

complete a normal workday and workweek, on the grounds that they are inconsistent with Dr. Walker's own largely-normal clinical findings. Tr. 31 (citing Tr. 502). This was a permissible reason to discount her opinions. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (conflict between doctor's opinion and her own findings was a "specific and legitimate" reason to reject her opinion). For example, Dr. Walker noted that plaintiff "has a long history of working" and her clinical interview revealed that plaintiff had worked as a cook for more than two decades, which is inconsistent with the opined limitation on the ability to complete a normal workday and workweek. Tr. 500. Dr. Walker also opined that plaintiff "now needs to be retrained for non-physical profession," which is inconsistent with the opined limitation on completing a normal workday and workweek in any profession. Tr. 502. The Court concludes the ALJ did not err by discounting Dr. Walker's opinions.

5.  Susan Hakeman, M.D.

The ALJ gave "very little weight" to Dr. Hakeman's opinions that plaintiff was severely limited in his abilities to persist in detailed tasks and to complete a normal workday and workweek, and markedly limited in his abilities to maintain punctual attendance, ask simple questions or request assistance, and communicate and perform effectively in a work setting. Tr. 31 (citing Tr. 507). The ALJ discounted these opinions because they were inconsistent with Dr. Hakeman's own findings that were entirely normal except for errors in concentration tasks. Tr. 508. Nothing in her clinical interview or mental status examination would support the extreme opined limitations. The Court concludes the ALJ did not err by discounting Dr. Hakeman's opinions.

6.  Anselm A. Parlatore, M.D.

The ALJ gave "little weight" to Dr. Parlatore's opinions that plaintiff was markedly

limited in his abilities to maintain punctual attendance and complete a normal workday and workweek because the opinions conflicted with Dr. Parlatore's own examination showing almost entirely normal results. As with Dr. Walker, the Court concludes this was a permissible reason to discount his opinions. For example, Dr. Parlatore's clinical interview revealed that plaintiff worked for 28 years as a cook, which is inconsistent with the opined limitation on the ability to complete a normal workday and workweek. Tr. 441.

Another reason the ALJ gave to discount Dr. Parlatore's opinion, that he included "legal counsel" as a recommendation, was erroneous. Tr. 31 (quoting Tr. 443). Dr. Parlatore listed "legal counsel, pain clinic, rheumatologist, therapy" as treatment recommendations. Tr. 443. The ALJ's conclusion that this suggested "that any assessed limitation was likely related to a legal rather than medical problem" is illogical. Tr. 31. It would be equally logical to conclude that any limitation related exclusively to plaintiff's pain. However, inclusion of an erroneous reason was harmless error because the ALJ provided the specific and legitimate reason that Dr. Parlatore's opinion was inconsistent with his own findings. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error harmless where "inconsequential to the ultimate disability determination"). The Court concludes the ALJ did not err by discounting Dr. Parlatore's opinions.

### B. Plaintiff's Testimony

Plaintiff testified that he cannot sit more than 45 minutes, stand more than 20 minutes, or walk more than half a block, and he drops things frequently because his grip is weak. Tr. 60, 58. If, as here, the claimant has presented objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear

and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, a court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Molina*, 674 F.3d at 1115 (ALJ's decision to discredit the claimant's testimony should be upheld if the ALJ provided valid reasons supported by the record even if the ALJ also provided one or more invalid reasons).

The ALJ's analysis of plaintiff's testimony largely consists of a lengthy summary of the medical evidence with little analysis. Although the ALJ's reasoning is scattered over several pages and interspersed with evaluation of the medical opinions, it appears that the ALJ discounted plaintiff's symptom testimony on the grounds that it was inconsistent with his own statements, the medical record shows only conservative treatment, and plaintiff left work for reasons other than disability. Tr. 27-32.

1. Inconsistent Statements

Inconsistencies in a claimant's testimony can be sufficient reasons to reject the claimant's testimony. *Molina*, 674 F.3d at 1112. Here, the ALJ found it inconsistent that, in an examination by Mr. Vandervort in January 2014, plaintiff reported "[n]o numbness or tingling in the lower extremities" while at the March 2016 hearing, plaintiff testified that his "left leg will go numb" if he sits or stands for too long. Tr. 521, 60. Plaintiff has degenerative disc disease, meaning it tends to worsen over time, and Mr. Vandervort documented worsening impairments between January 2014 and August 2015. *See* Tr. 24, 511, 519. Treatment records show that plaintiff denied leg numbness in 2012 (Tr. 279) and began consistently reporting it in late 2014

through 2015. Tr. 364 ("intermittent periods of numbness in his calf and in his feet"); Tr. 383, 379, & 375 ("numbness in the left thigh"); Tr. 487 (tingling feet); 462 ("painful tingling in the feet"). Viewing the record as a whole, plaintiff's statements are not inconsistent. *See Thomas*, 278 F.3d at 954 (court must consider the record as a whole when determining if substantial evidence supports the ALJ's decision).

The ALJ also found plaintiff's January 2014 report of neck pain sometimes radiating into his right shoulder to be inconsistent with his August 2015 report of neck pain sometimes radiating into his left arm. Tr. 29 (citing Tr. 521, 515). Plaintiff has told his treating doctor that "his pain varies in location." Tr. 419. The core pain is consistently in his neck, and the ALJ does not explain why the secondary occasional radiation outward should be the same every time.

The ALJ noted that in October 2014 plaintiff reported "[n]o specific injuries" related to his back and neck pain, while in August 2015 he reported his neck condition was "caused by auto accident a few years ago." Tr. 447, 500. In both exams he also reported that he has had progressively worsening pain for *over 20 years*. Tr. 447, 500. Given that context, plaintiff's speculation that an auto accident contributed to recent worsening is of little import. Tr. 447, 500.

Treatment records show that plaintiff reported drinking "Beer Approx 2 dirnks [sic] per day." Tr. 405. The ALJ found this inconsistent with his testimony. Tr. 32. Plaintiff explained that the two beers per day treatment note resulted from a "misunderstanding" and that he only drinks "maybe two beers a month if that…." Tr. 64. This is supported by his consistent reports to examining doctors that he drinks "an occasional beer." Tr. 505; *see also* 265, 360, 365, 376, 415. The ALJ failed to address plaintiff's explanation for the treatment note reporting two drinks daily, and his otherwise uniform reports throughout the record that he drinks only occasionally.

Plaintiff answered "No" when the ALJ asked if he had done any work "for cash." Tr. 47.

The ALJ found this inconsistent with plaintiff's report in August 2015 that on days "he feels good, he goes out and tries to walk or make a little money." Tr. 500. At the hearing, plaintiff testified that sometimes he drives a friend who mows lawns, and the friend will put gas in plaintiff's truck in return. Tr. 49. Plaintiff thus makes a little money, in the sense that he saves money he would otherwise spend buying gas, but does not receive cash.

In each example, the ALJ's interpretation that plaintiff's statements are inconsistent relies on a selective reading of the record, and the ALJ fails to address reasonable explanations for any apparent discrepancy. Even taken together, these examples do not constitute a "clear and convincing" reason to discount plaintiff's testimony. The Court concludes the ALJ erred by discounting plaintiff's testimony on the grounds of inconsistent statements.

2. Medical Record and Conservative Treatment

A claimant's symptom testimony cannot be rejected solely because the severity of the symptoms alleged is not supported by the medical evidence, but the medical evidence is relevant in assessing the testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Inadequately explained failure to seek treatment or follow prescribed treatment can be a sufficient reason to reject the claimant's testimony. *Molina*, 674 F.3d at 1112. However, an ALJ must consider a claimant's reasons for failure to seek treatment or follow a prescribed course of treatment. *Trevizo*, 871 F.3d at 679-80 (ALJ erred in weighing failure to take narcotics against claimant's credibility, because ALJ "did not address the believability of Trevizo's proffered reasons"). Here, the ALJ concluded that plaintiff's pain was not as severe as alleged because he was given only conservative treatment, not narcotics or surgery, and he did not visit the pain clinic between July 2015 and the March

2016 hearing. Tr. 29.

Plaintiff was treated with epidural steroid injections, and had radiofrequency ablation. Tr. 267, 268, 469, 56. Epidural steroid shots are not generally considered conservative treatment. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017); *Garrison*, 759 F.3d at 1015 n. 20. Burning a nerve, which is more permanent, is not likely to be considered conservative in most cases.

The ALJ concluded that plaintiff's impairments were not as severe as alleged because one treatment providers said surgery was not "absolutely" needed and another said that "surgery would likely lead to unpredictable results." Tr. 28 (citing Tr. 267, 278). That surgery was not certain to help suggests that the cause of his symptoms is difficult to address, not that his symptoms are mild.

The ALJ's conclusion that plaintiff's "pain was not severe enough to warrant narcotic medication" is unsupported by the record. Tr. 28. His doctor did prescribe narcotics, but stopped because "none of the narcotic pain medications tried thus far have controlled his pain to any significant degree…." Tr. 396.

Plaintiff did not fail to follow a prescribed course of treatment. He followed prescribed courses of narcotics, steroid injections, chiropractic treatment and physical therapy, but none helped more than minimally. *See* Tr. 320, 352, 375. The ALJ failed to address whether plaintiff's failure to seek further treatment at the pain clinic after July 2015 was adequately explained by the clinic's inability to mitigate his pain significantly. The ALJ thus erred by discounting plaintiff's testimony on the grounds that the medical record, conservative treatment, or the failure to seek further treatment show that his symptoms are less severe than alleged.

### 3. Work History

Stopping work for reasons other than impairments is a valid factor to consider in evaluating a claimant's pain testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). But the facts here are markedly different from those in *Bruton*. Plaintiff testified that his job ended in 2012 because he was arrested, but he does not allege disability until March 2014. Tr. 49-50, 21. In *Bruton*, the alleged disability date was the day the claimant stopped working. 268 F.3d at 826. The court held that the claimant's failure to seek any medical attention for nine more months and failure to seek treatment for his alleged pain, in addition to admitting that he stopped working for reasons other than disability, were together sufficient to discount claimant's testimony. *Id.* at 828. *Bruton* is inapposite here.

The ALJ's interpretation that plaintiff testified he could do his former job is unsupported by the record. *See* Tr. 32. The ALJ asked the compound question: "If you were offered a job or if the casino said, hey, we want you to come back *would you have been* able to do the job?" and plaintiff replied "No doubt...." Tr. 52 (emphasis added). His attorney later asked the clarifying question "[Were you] mentioning that you could, if somebody offered you a job you'd take a job back in 2012[?]" and plaintiff replied "Yeah." Tr. 53. This testimony does not establish that plaintiff believed that, at the time of the March 2016 hearing, he could perform his previous work as a cook. Moreover, it is undisputed that he cannot. Tr. 33 ("claimant is unable to perform any past relevant work").

The Court concludes that the ALJ did not provide a clear and convincing reason to discount plaintiff's symptom testimony.

## IV. SCOPE OF REMAND

Plaintiff requests the Court remand the case for further administrative proceedings. Dkt. 9 at 16. In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020.

Here, the Court finds that enhancement of the record would be useful. Although Mr. Vandervort's opinion limits plaintiff to "sedentary" work, the form he filled out defines "sedentary" differently than Social Security regulations do. *Cf.* Tr. 512 ("Able to lift 10 pounds maximum and frequently lift or carry lightweight articles. Able to walk or stand only for brief periods. … Frequently means … 2.5 to 6 hours" per day) *with* 20 C.F.R. §§ 404.1567(a), 416.967(a) ("lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. [W]alking and standing are required occasionally"), SSR 83-10 ("occasionally" means up to 2 hours per day). There is no vocational expert testimony, or other evidence, as to whether a person with an RFC incorporating Mr. Vandervort's limitations would be able to perform any jobs available in significant numbers. In addition, plaintiff testified that he can only sit, stand, and walk for limited periods at a time, but did not testify how much he could sit, stand, or walk total in an eight-hour day. It is also unclear how Dr. Uhl's opined limitations on learning new tasks and maintaining appropriate behavior

would affect plaintiff's RFC, which already limits plaintiff to "simple routine tasks" and "only superficial interaction with co-workers and the public." Enhancement of the record would be useful and, accordingly, remand for further proceedings is appropriate.

V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Mr. Vandervort's and Dr. Uhl's opinions and plaintiff's testimony, reassess the RFC as appropriate, and proceed to step five as needed.

DATED this 21st day of August, 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 15